# Third District Court of Appeal

## State of Florida

Opinion filed October 28, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-1941
Lower Tribunal No. 14-19758
_____


**100 Lincoln Rd SB, LLC,**
Petitioner,

vs.

**DAXAN 26 (FL), LLC,**
Respondent.


A Writ of Certiorari to the Circuit Court for Miami-Dade County.

Cozen O'Connor and Richard M. Dunn, for petitioner.

Kluger, Kaplan, Silverman, Katzen & Levine and Alan J. Kluger and Marko Cerenko, for respondent.


Before WELLS, SALTER and FERNANDEZ, JJ.

SALTER, J.

100 Lincoln Rd SB, LLC ("100 Lincoln"), petitions for a writ of certiorari quashing circuit court orders allowing Daxan 26 (FL), LLC ("Daxan"), to maintain a recorded lis pendens without a bond. Concluding that the orders below correctly interpreted and applied the lis pendens statute, section 48.23, Florida Statutes (2014), and the declaration of condominium applicable to the property in contention in the lawsuit between these parties, we deny the petition.

This case illuminates the difference between (a) a condominium association's right to consent to or reject a proposed unit sale or transfer and (b) the association's right to exercise a right of first refusal.

Facts and Procedural History

The Decoplage Condominium is a multi-use building in a prime area of Miami Beach. Under a declaration of condominium ("Declaration") recorded in 1992, the sixteen-story building has 625 residential condominium units and 42 commercial units. The case below involves the sale of four valuable street-level commercial units owned by a company controlled by the drug store chain Walgreens and sought to be purchased in 2014 by 100 Lincoln for $28,000,000.00.

Initially, counsel for the buyer provided written notice to the condominium association of the transaction and requested the association to waive its right of first refusal. The right of first refusal is found in Article XV of the recorded Declaration, "Sale or Transfer":

2

15.01 In the event any Unit Owner wishes to sell or transfer his Unit, the Association shall have the option to purchase said Unit, upon the same conditions as are offered by the Unit Owner to a third person. Any attempt to sell said Unit without prior approval of the Association shall be deemed a breach of this Declaration, shall be wholly null and void, and shall confer no title or interest whatsoever upon any purchaser, tenant, or lessee . . . .

Additional provisions in Article XV require the seller to deliver to the board of directors of the Association a copy of the executed purchase agreement (executed "subject to the board's waiver of its right of first refusal and consent to the sale or transfer") and impose maximum time limits for the parties to act. Another provision, section 15.03, authorizes the board of directors of the Association to designate one or more non-Unit Owners "who are willing to purchase upon the same terms as those specified in the [selling] Unit Owner's notice."

The Association designated Daxan (in a written assignment of the right of first refusal) as a non-Unit Owner willing to purchase upon the same terms as 100 Lincoln had offered, and Daxan in turn notified Walgreens of those facts. Walgreens then notified the Association that the right of first refusal in Article XV of the Declaration did not apply, and that its initial letter requesting a waiver of that right was mistaken. Walgreens asserted that a provision in Article XXV of the Declaration controlled: "the Commercial Units may be used for any and all

3

lawful purposes, without the consent of the Association, and may be transferred, conveyed, leased or disposed of without the consent of the Association."

Apparently unbeknownst to the Association and Daxan, however, Walgreens and 100 Lincoln accelerated the closing to June 23, 2014, and modified the purchase terms without notice to, or approval of, the Association or Daxan.[1] Three days later, the Association recorded its "Notice of Association's Exercising Option to Purchase." That instrument included terms designating Daxan as the Association's assignee of its right of first refusal, identifying Daxan's mailing address, and specifying the Article within the Declaration containing the right of first refusal.[2]

On July 3, 2014, 100 Lincoln's parent company entered into a contract to sell all of the interests in 100 Lincoln to a non-party purchaser for $43,500,000.00.[3] Daxan filed a circuit court lawsuit against 100 Lincoln, Walgreens, the Association, and others, seeking declaratory and other relief to enforce its alleged right to purchase the commercial units. Daxan later filed an amended complaint

---

[1] The modification changed the purchase price from $28,000,000.00 in cash to $3,000,000.00 in cash and a $25,000,000.00 purchase money mortgage. The closing occurred about five weeks before the date specified in the original contract.

[2] The recorded assignment also identified the date and recording information for the complete Declaration.

[3] This transaction failed to close when the prospective purchaser became aware of the issue relating to the right of first refusal and Daxan's threatened or pending litigation.

and recorded a lis pendens containing the legal description of the commercial units and identifying the recorded Declaration and the deed from Walgreens alleged to have violated the Declaration.

100 Lincoln filed a motion to dissolve the lis pendens or, in the alternative, to require the posting of a bond. Following an evidentiary hearing, the trial court denied the motion, declined to impose a bond requirement, and later denied 100 Lincoln's motion for reconsideration. 100 Lincoln's petition for certiorari followed.

Jurisdiction

100 Lincoln sought review via certiorari rather than as an appeal from a non-final order under Florida Rule of Appellate Procedure 9.130(3)(B), though both 100 Lincoln and Daxan noted that this Court has approved both jurisdictional predicates at different times. Compare Munilla v. Espinosa, 533 So. 2d 895 (Fla. 3d DCA 1988) (treating lis pendens orders as appealable non-final orders and applying principles "relating to the issuance of temporary injunction orders refusing to vacate same or matters relating to a bond or the sufficiency thereof"), with Blue Star Palms, LLC v. LED Trust, LLC, 128 So. 3d 36, 38 (Fla. 3d DCA 2012) (stating that certiorari is the appropriate procedure to challenge denial of a motion to dissolve lis pendens).

5

The other Florida district courts of appeal also hold that certiorari is the appropriate procedure for the review of such an order. See Philip J. Padovano, 2 Fla. Prac. Appellate Practice § 30:5, n.31 (2015 ed.). The Supreme Court of Florida has approved a district court of appeal decision in which a trial court's order relating to a lis pendens was reviewed via certiorari. S & T Builders v. Globe Props., Inc., 944 So. 2d 302 (Fla. 2006). On the basis of these authorities, we apply the principles of review applicable to certiorari. The burden was and is on 100 Lincoln to demonstrate a departure "from the essential requirements of law . . . caus[ing] material injury to the petitioner throughout the remainder of the proceedings below, effectively leaving no adequate remedy on appeal." Martin-Johnson, Inc. v. Savage, 509 So. 2d 1097, 1099 (Fla. 1987).

Analysis

Section 48.23(1), Florida Statutes (2014), provides:

> (1)(a) An action in any of the state or federal courts in this state operates as a lis pendens on any real or personal property involved therein or to be affected thereby only if a notice of lis pendens is recorded in the official records of the county where the property is located and such notice has not expired pursuant to subsection (2) or been withdrawn or discharged.

> (b) 1. An action that is filed for specific performance or that is not based on a duly recorded instrument has no effect, except as between the parties to the proceeding, on the title to, or on any lien upon, the real or personal property unless a notice of lis pendens has been recorded and has not expired or been withdrawn or discharged.

6

2. Any person acquiring for value an interest in the real or personal property during the pendency of an action described in subparagraph 1., other than a party to the proceeding or the legal successor by operation of law, or personal representative, heir, or devisee of a deceased party to the proceeding, shall take such interest exempt from all claims against the property that were filed in such action by the party who failed to record a notice of lis pendens or whose notice expired or was withdrawn or discharged, and from any judgment entered in the proceeding, notwithstanding the provisions of s. 695.01, as if such person had no actual or constructive notice of the proceeding or of the claims made therein or the documents forming the causes of action against the property in the proceeding.

The petition in the present case alleges that the lawsuit below is not "based on a duly recorded instrument." 100 Lincoln argues that a later section of the same statute, section 48.23(3), should have been applied, mandating proof of a nexus between the plaintiff's claims and the real estate, and requiring a lis pendens bond in the event that such a nexus is established.

Daxan argues, and the trial court found, that the action is based on a duly recorded instrument—the Declaration of Condominium. We agree. The legal issue is whether the Declaration provides adequate notice to a good faith purchaser that there is a cloud on the title. Ross v. Breder, 528 So. 2d 64, 65 (Fla. 3d DCA 1988). The right of first refusal on sale or transfer is clearly stated in section 15.01 of the Declaration. Walgreens obviously found the provision before it sent its letter requesting the Association to waive its right of first refusal with respect to the proposed purchase of the commercial condominium units by 100 Lincoln. That the provision and exercise of the right (evidenced by the recorded notice of

7

exercise) by the Association's designee Daxan created a cloud on title is also evidenced by the title policy exceptions in the record.

100 Lincoln relies on American Legion Community Club v. Diamond, 561 So. 2d 268 (Fla. 1990), for the proposition that Daxan's lawsuit seeking to set aside the deed from Walgreens to 100 Lincoln is not based on a recorded instrument. In American Legion Community Club, however, the basis for relief was an allegation that the officers of the grantor failed to comply with its "constitution, rules and regulations, and bylaws." Id. at 271. Those documents were not recorded and did not provide notice of a cloud on title to a prospective purchaser in good faith. In the present case, Daxan's claims are based on the recorded Declaration and its terms, and the commercial units in contention are part of the legal description in the recorded instrument.

Conclusion

Because we have concluded that the lis pendens was filed in compliance with section 48.23 and in an action which is based on a duly recorded instrument, we need not and do not address 100 Lincoln's arguments challenging "nexus" and seeking a substantial bond. The petition is denied.